UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C.T.C.,

　　　　　　Plaintiff,

　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　Defendant.

Case No.  25-cv-09275-SVK

**ORDER REVERSING COMISSIONER'S DECISION AND REMANDING CASE**

Re: Dkt. Nos. 13, 16

　　　　Plaintiff C.T.C. appeals the decision of Defendant, the Commissioner of Social Security, which denied his application for disability insurance benefits.  For the reasons stated below, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the case for further proceedings.

## I.　　BACKGROUND

　　　　On or about May 3, 2023, Plaintiff filed an application for Supplemental Social Security income for disability benefits.  *See* Dkt. 10 (Administrative Record ("AR")) 22, 256, 260.  On October 5, 2023, Plaintiff's initial claim was denied.  AR 81-83.  Plaintiff's claim was again denied on reconsideration on March 12, 2024.  AR 99-100.  On September 10, 2024, an Administrative Law Judge ("ALJ") held an in-person hearing.  AR 49-80.  On October 18, 2024, the ALJ found Plaintiff was not disabled and issued an unfavorable decision.  AR 22-41 (the "ALJ Decision").

　　　　As relevant here, in applying the sequential evaluation process for determining disability, at step three, the ALJ evaluated the listed impairments ("Listings") proffered by Plaintiff (12.03, 12.04, 12.06 and 12.15) and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  AR 28-31.  At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "a full

range of work at all exertional levels" but with certain non-exertional limitations. AR 31-39. Finally, at step five, considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs in the national economy existing in significant numbers that Plaintiff could work including: store laborer, kitchen helper and floor waxer. AR 39-41. The ALJ thus concluded that Plaintiff was not under a disability, as defined by the Social Security Act, from August 20, 2019 through the date of the ALJ Decision. AR 41.

On September 9, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ Decision. AR 1-3. On October 24, 2025, Plaintiff timely filed this action in this District seeking review of the ALJ Decision. Dkt. 1. The Parties have consented to magistrate judge jurisdiction. Dkts. 6, 7. In accordance with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the Parties have presented the action for decision on the briefs. Dkt. 13; Dkt. 16; *see* Fed. R. Civ. P. Supp. SS Rule 5. The Court now decides the action without oral argument.

## II.    ISSUES FOR REVIEW

1. Did the ALJ properly address the medical opinion evidence of:

   a. The psychological consultive examiner, Dr. Michael Schmidt, Ph.D.?

   b. The psychological consultive examiner, Dr. Mai Manchanda, Psy.D.?

   c. The examiner Dr. Nicholas Nelson, MBBS[1]?

2. Did the ALJ properly address Plaintiff's subjective symptom testimony?

3. Was the ALJ's determination that Plaintiff did not meet the requirements of Listings 12.03, 12.04, 12.06 and 12.15 supported by substantial evidence?

---

[1] The Commissioner refers to Dr. Nelson as "Mr." Nelson, Plaintiff refers to him as "Dr." Nelson and the ALJ appears to have used both titles but preferred Mr. Nelson. *See, e.g.*, AR 27, 34, 38. The Court will refer to this examiner as Dr. Nelson, which appears in accord with his degree of MBBS (Bachelor of Medicine, Bachelor of Surgery), which is an MD-equivalent degree given by medical schools following the United Kingdom's higher education tradition. *See, e.g.*, MacMillan, C. "Decoding the 'Alphabet Soup' of Medical Degrees,'" (April 6, 2022) *available at* https://www.yalemedicine.org/news/medical-degree-glossary; Medical University of the Americas, "MBBS vs MD: Key Differences Explained for Aspiring Medical Students," (October 1, 2025), *available at* https://www.mua.edu/blog/mbbs-vs-md-key-differences-explained-for-aspiring-medical-students. This nomenclature does not affect the substance of the Court's decision, just as it appears not to have affected the substance of the ALJ's decision. *See* AR 27, 34, 38.

4.  Was the ALJ's RFC determination supported by substantial evidence?

5.  Whether the Court should affirm, remand for further proceedings or remand for immediate payment of benefits?

### III.    LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court reviews the Commissioner's decision denying benefits to "determine whether it is free from legal error and supported by substantial evidence in the record as a whole." *Precious A. J. v. Kijakazi*, No. 21-cv-00242 KS, 2022 WL 22894110, at *2 (C.D. Cal. Aug. 1, 2022) (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007);  42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  For the "substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).  Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

However, in cases where "a claimant's symptom testimony is discredited," the Ninth Circuit has "established a two-step analysis" that the ALJ must engage in. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*  Second, if "the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*  "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d

United States District Court
Northern District of California

at 678.  At the same time, "[t]he standard isn't whether [this Court] is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  This standard thus "requires an ALJ to show his work." *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

## IV.     DISCUSSION

As an initial matter, Plaintiff presents the issues in this case in a different order than presented above, beginning with the ALJ's evaluation of the Listings.  *See* Dkt. 13 at 5.  The Court begins instead with the ALJ's treatment of the underlying evidence, both the various medical opinions and Plaintiff's subjective symptom testimony, because this evidence is intertwined with the ALJ's determinations at steps three and four.  *See, e.g.*, AR 28-31 (considering, *inter alia*, medical examinations and Plaintiff's testimony to determine that Plaintiff had only moderate limitations in the relevant broad areas of functioning).

### A.     Issue One:  The ALJ Did Not Properly Address Some of the Medical Opinion Evidence

The ALJ considered the opinions of three examiners:  Dr. Schmidt, Dr. Manchanda and Dr. Nelson.  *See* AR at 27, 29-30, 32-39.  The ALJ found the opinions of Drs. Schmidt and Manchanda to be persuasive in part, (AR 36-37), and the opinion of Dr. Nelson to be unpersuasive, (AR 38).  Current regulations require that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  An ALJ must explain "how persuasive [he or she] finds all of the medical opinions from each doctor … and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c (cleaned up)).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant ... objective

United States District Court
Northern District of California

United States District Court
Northern District of California

medical evidence." *Id.* at 792-93 (same). "Consistency means the extent to which a medical opinion is consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (same). An ALJ must explain supportability and consistency and "may, but is not required to, explain how other factors" were considered. *C.B. v. O'Malley*, No. 22-cv-05579-LJC, 2024 WL 1329920, at *7 (N.D. Cal. Mar. 27, 2024) (citing 20 C.F.R. § 404.1520c(b)(2)(c)). Plaintiff argues that the Commissioner erred in finding the opinions of Drs. Schmidt and Manchanda persuasive and in finding the opinion of Dr. Nelson to be unpersuasive. Dkt. 13 at 11-13. The Court addresses each examiner in turn.

### 1.     The ALJ Properly Addressed Dr. Schmidt's Opinion

Dr. Schmidt conducted an examination of Plaintiff on July 27, 2023. AR 1096-1103. He opined that Plaintiff had "no impairment," "mild impairments" or "moderate impairments" in various cognitive functions. AR 1102. Plaintiff argues that Dr. Schmidt's opinion should not have been credited because it was internally inconsistent and not supported by Dr. Schmidt's examination. Dkt. 13 at 11-12.[2] The Commissioner disagrees, citing the portions of the ALJ's Decision regarding supportability and consistency. Dkt. 16 at 10-11. The Court agrees with the Commissioner.

As to supportability, the ALJ clearly explained how persuasive she found the different parts of Dr. Schmidt's opinions and the portions of the record that she found supported these findings. AR 36-37. Plaintiff argues that Dr. Schmidt's opinions were "conclusory;" but in doing so, he discounts the results of the functional examination reported by Dr. Schmidt and relied on by the ALJ. *See* Dkt. 13 at 11-12; AR 36-37. Plaintiff does not provide any authority to support this argument, and in reply Plaintiff does not respond to the Commissioner's rebuttal except to pivot to his inconsistency-based arguments. Dkt. 17 at 7. The Court, in turn, is not persuaded by Plaintiff's arguments as to supportability.

---

[2] Plaintiff also argues that the ALJ's finding that Dr. Schmidt's opinion was persuasive *over the opinion of Dr. Nelson* was erroneous because "Dr. Schmidt also only conducted an interview and a mini mental state examination (compare to the Cognitive Assessment test and three assessments given by Dr. Nelson below)." Dkt. 13 at 12. The Court addresses this issue in its discussion of the ALJ's treatment of Dr. Nelson's opinion, below.

As to inconsistency, Plaintiff's argument hits closer to the mark:  Dr. Schmidt does make several internally inconsistent findings.  For example, Dr. Schmidt's report notes that "[t]he claimant was well-groomed and appeared to have poor hygiene" and that he had "no impairment" in his ability to "sustain concentration, attention, consistency, and persistence in work-related activity" despite Plaintiff's report that he "has anger and fear and do[es] not know what to do each day, [and that] it is non-stop."  *See* Dkt. 13 at 11-12 (quoting AR, 1096-1102).  The Commissioner tacitly concedes these contradictions but argues that the ALJ already accounted for them by finding that Dr. Schmidt's opinion was "partially consistent" with record evidence and ultimately accommodating greater restrictions.  Dkt. 16 at 10 (citing AR 37).  The Court agrees.  The ALJ found Dr. Schmidt's opinion to be persuasive only "in part."  AR 37.  In so doing, she specifically accounted for the inconsistency relating to Dr. Schmidt's "concentration, attention, consistency and persistence" finding by accommodating "a greater restriction in concentration by precluding Plaintiff from engaging in production pace work and limiting the amount of change and decision making he would have to perform."  AR 37.[3]  This is appropriate on the record before the Court.

In sum, the ALJ's finding that Dr. Schmidt's opinion was "persuasive in part" is supported by substantial evidence, and the ALJ complied with the regulations in explaining what portions of Dr. Schmidt's opinions were supported and consistent, versus unsupported or inconsistent.  *See Woods*, 32 F.4th at 792.

### 2. The ALJ Erred in Finding Dr. Manchanda's Opinion Persuasive with Regard to Plaintiff's "Moderate Impairment" in Social Interaction

Dr. Manchanda examined Plaintiff on February 15, 2024.  AR 37, 1131-38.  He evaluated the same six areas of functioning as Dr. Schmidt and found that Plaintiff had mild or moderate impairments in all categories.  AR 1137.  As with Dr. Schmidt, the ALJ reviewed the medical evidence in the record and found Dr. Manchanda's opinion "persuasive in part."  AR 37.  She

---

[3] While the ALJ did not explicitly address the "well-groomed" vs. "poor hygiene" inconsistency, it does not appear that Plaintiff's grooming was the basis for any of the impairments assessed by Dr. Schmidt.  *See* AR 1102.  In any case, the ALJ did not rely on Plaintiff being well-groomed (and, indeed, noted that he was "poorly groomed" in March 2023) in any of her findings.  AR 33. Accordingly, to the extent that failing to address this contradiction is an error, Plaintiff has not shown any harm.

explained that Dr. Manchanda's "memory findings [were] inconsistent with th[e] evidence and not well supported," but "[o]therwise, the opinion is persuasive." *Id.* Plaintiff challenges this latter finding, specifically arguing that the ALJ erred in finding Dr. Manchanda's determination of "only a moderate impairment in ability to maintain social interaction" persuasive because it is unsupported by and inconsistent with Dr. Manchanda's examination notes. Dkt. 13 at 12. Specifically, Plaintiff argues that Dr. Manchanda's report found only a moderate impairment in social interaction after noting the following of her interaction with Plaintiff:

> He referred to a hate crime when he found himself intubated in a hospital, [claiming] 'they didn't help me. They were just going to let me die!' (He nearly wailed this, raising his voice.) The claimant rambled in a disorganized way such that it was difficult to follow his story or redirect him to obtain clarification. … Thought Process: Tangential, circumstantial, and preservative. Difficult to redirect. Thought Content: Paranoid ideation, possible delusions.

AR 1132, 1134.

The Commissioner's response is largely off-point. In terms of supportability, the Commissioner focuses on the ALJ's explanation of Plaintiff's memory  and reasoning capabilities, *e.g.*, "Plaintiff demonstrated an inability to recall any items after a delay or to spell the word 'world' backward but made only 1 error completing serial 7s;  he showed moderate impairment in insight and judgment and exhibited a tangential, circumstantial, and preservative thought process and paranoid ideation with rambling speech." Dkt. 16 at 11. None of these findings are relevant to the specific impairment/opinion challenged by Plaintiff. *Compare id. with* Dkt. 13 at 12.

In terms of consistency, the Commissioner cites some evidence similarly related to other, non-challenged findings and one portion of the ALJ's Decision that appears to, if anything, support Plaintiff's contention:  "Plaintiff reported difficulty with socialization due to a fear and distrust of others following his assault." Dkt. 16 at 11 (citing AR 37, AR 1098-99). None of this is persuasive. The only relevant evidence cited by Commissioner is the ALJ's explanation that Plaintiff's "conditions continue to be managed with outpatient level treatment and he is independent in self-care and activities of daily living." *Id.* (citing AR 37). Yet, as Plaintiff argues on reply, "an inpatient level of mental health treatment is not the legal standard" for a more-than moderate impairment. Dkt. 17 at 7-8. The Court agrees:  A marked impairment merely requires

United States District Court
Northern District of California

United States District Court
Northern District of California

"a substantial loss in the ability to effectively function," as opposed to a moderate impairment which requires that "the individual is still able to function satisfactorily," whereas  AR 1136.  "[I]t [is] unreasonable to conclude that unless a claimant received inpatient or semi-impatient treatment, the claimant cannot be deemed to have severe or marked limitations." *Alexa G. v. Comm'r of Soc. Sec.*, No. C24-5301-BAT, 2024 WL 4249532, at *2 (W.D. Wash. Sept. 20, 2024).

Accordingly, the Court finds that the ALJ erred in her consideration of Dr. Manchanda's opinion in two parts.  First, the ALJ noted Dr. Manchanda's "moderate impairment" finding for social interaction and supported it with reference to "claimant['s] reports [of] difficulty with socialization due to a fear and distrust of others following his assault."  AR 37.  This tends to support, not undercut a marked limitation, particularly in light of Dr. Manchanda's examination notes.  Second, an ALJ must explain "how persuasive [he or she] finds *all* of the medical opinions from each doctor … and explain how [he or she] considered the supportability and consistency factors in reaching these findings."  *Woods v. Kijakazi*, 32 F.4th at 792 (emphasis added).  Yet the ALJ's opinion does not otherwise address Dr. Manchanda's "moderate impairment in social interaction" opinion or explain how it is supportable or consistent with other medical evidence. AR 37.  Thus, the ALJ erred.  *See Woods*, 32 F.4th at 792.

### 3.      The ALJ's Erred in Discounting Dr. Nelson's Medical Opinion

Finally, Plaintiff argues that the ALJ erred in rejecting Dr. Nelson's opinion assessing "an Extreme Limitation in interacting with others."  Dkt. 13 at 12-13.  The Court agrees with Plaintiff for two reasons.

First, Plaintiff points out that part of the ALJ's basis for rejecting Dr. Nelson's opinions was her finding it "notable" that "Mr. Nelson indicated that the claimant did not appear to have a substance use disorder as the claimant did not disclose his substance use."  AR 38.  Plaintiff argues this is simply not true:  "Dr. Nelson explicitly says [Plaintiff] has "Intermittent use of stimulants (*e.g.*, amphetamine) for no[n]-recreational purposes without features of dependence or substance use disorder and opined that total abstinence would not change his marked and extreme limitations."  Dkt. 13 at 13 (citing AR 2993).  The Court agrees with Plaintiff;  the ALJ missed this portion of Dr. Nelson's examination.  *See* AR 38 (citing the same exhibit, 37F, for the

opposite proposition).  An "ALJ's misstatement of [a] medical record[] is legal error."  *E.g.*, *Rogers v. Saul*, No. CV-18-0260-TUC-BGM, 2019 WL 4439689, at *19 (D. Ariz. Sept. 17, 2019).

However, the Parties do not directly address the effect of this mistake, and on this point the ALJ's Decision is less than clear.  She states that Dr. Nelson's failure to recognize Plaintiff's substance abuse was "not material to the determination above" (without explaining what the "determination above" refers to) and at the same time states that the failure "is consistent with a finding that Dr. Nelson did not review the entirety of the file and appeared to rely quite heavily on subjective reports."  AR 38.  The Court views it as more likely than not that this error by the ALJ was not harmless and was material to her rejection of Dr. Nelson's opinion and thus finds a material legal error that could warrant remand.  *Cf. Najera v. Colvin*, No. 16-cv-2442-CFE, 2016 WL 7167887, at *2 (C.D. Cal. Dec. 8, 2016) ("ALJ's material mischaracterization of the record can warrant remand." (citing *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999)).

Second, Plaintiff  argues that "The ALJ Erred in Weighing the Medical Opinions of Drs. Schmidt and Mancha[n]da **over** Dr. Nelson."  *Id.* (emphasis added).  In this context, Plaintiff's broader complaints (not limited to the substance-abuse issue, addressed above) are well-taken.  As best as the Court can discern, as to supportability, the ALJ rejected Dr. Nelson's opinion because he:  (1) submitted an opinion "that was based upon an evaluation without any treatment," (2) "appears to have reviewed only 2 reports and based his opinion largely on subjective reports by the claimant," and (3) noted "little … in the way of actual clinical observations/findings."  AR 38. However, as Plaintiff points out, Dr. Nelson "conducted a Cognitive Assessment test and reviewed the PLC-5 (for PTSD), the PHQ-9 (for Major Depression), and the GAD-7 (for anxiety)" in contrast to, *e.g.*, Drs. Schmidt and Manchanda who performed only single interviews and both relied on "10-minute" mini mental-state examinations.  *Compare* AR 2979 (Dr. Nelson) *with* AR 1099-1102 (Dr. Schmidt) *and* AR 1135-37 (Dr. Manchanda).  While the ALJ's discounting of Dr. Nelson might be supportable in a vacuum, when compared to her acceptance of Drs. Schmidt and Manchanda's opinions, it constitutes unexplained and impermissible cherry-picking.  *E.g.*, *Martinez v. Berryhill*, No. 16-cv-04960-JSC, 2017 WL 5900191, at *9 (N.D. Cal. Nov. 30, 2017)

United States District Court
Northern District of California

(agreeing that the ALJ "failed to properly weigh the medical opinions insofar as she 'cherry-picked' from CE Dr. Yee's opinion, and assigned little weight to treating source Ms. Johnson's assessment[.]'").

* * *

In sum, as to her treatment of the medical opinions of Drs. Schmidt, Manchanda and Nelson, the ALJ's finding that Dr. Schmidt's opinion was persuasive in part was proper, her failure to address the supportability and consistency factors for Dr. Manchanda's "moderate limitation as to social interaction" opinion was erroneous and her discounting of Dr. Nelson's opinion was erroneous both because it appears to have relied on a misapprehension of the medical record and because it constitutes impermissible cherry-picking as compared to Drs. Schmidt Manchanda's opinions.

Whether the ALJ's errors as to Drs. Manchanda and Nelson's opinions were harmless, and the results of those errors, are addressed in Sections IV.C.2. and IV.D., below.

**B.      Issue Two:  The ALJ Erred in Discrediting Plaintiff's Subjective Symptom Testimony Based on Not-Inconsistent Medical Evidence, Clear Misreadings of the Record and Her Assessment of Plaintiff's Daily Living Activities**

Plaintiff also argues that the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective "testimony regarding the intensity, persistence and limiting effects of his symptoms." Dkt. 13 at 14-16. Specifically, the ALJ Decision explains that:

> The claimant alleged that his mental health condition significantly affects his ability to function on a daily basis and precludes him from working. Specifically, he reported that since being the victim of a hate crime, he is untrusting of others, even the doctors who prescribe his medication and his immigration attorney, and paranoid, which makes it hard for him to focus and sleep. He stated he does not go many places because he does not feel safe. He also indicated that he has difficulty remembering things, loses track of conversations, and has to be reminded to perform self-care and take prescribed medication. The claimant averred great difficulty managing stress and that he is easily overwhelmed.

AR 32.  However, the ALJ concluded that these "statements about the intensity, persistence, and limiting effects of [Plaintiff's] symptoms [] are not entirely consistent with the clinical evidence of record or the claimant's reported activities of daily living." *Id.* As pointed to by the Commissioner, the ALJ goes on to explain over several pages the specific parts of the record that

United States District Court
Northern District of California

she views as undermining Plaintiff's testimony.  AR 32-36.

Plaintiff argues, and the Commissioner does not contest, that the ALJ made no finding of malingering.  *See* Dkt. 13 at 15;  Dkt. 16 at 14-16.  Thus, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Trevizo*, 871 F.3d at 678.  While the ALJ has cited a breadth of evidence to support her rejection of Plaintiff's subjective symptom testimony, the Commissioner argues her reasons reduce to three grounds:  objective medical evidence, Plaintiff's "sporadic" record of seeking treatment and Plaintiff's "activities of daily living."  *See* Dkt. 16 at 14-15 (summarizing AR 32-35).

As to the objective medical evidence, as the Commissioner concedes, such evidence "may not serve as the sole ground for rejecting a claimant's subjective symptoms" and may be weighed only when it "is inconsistent with the claimant's subjective testimony."  *See* Dkt. 16 at 14-15;  *see also S. T. v. Comm'r of Soc. Sec.*, No. 24-cv-07721-SVK, 2025 WL 1924385, at *3 (N.D. Cal. July 14, 2025) (explaining the requirements of *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) and *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)).  Here, the majority of the objective medical evidence cited to discredit Plaintiff's testimony is not inconsistent with Plaintiff's testimony and is cabined behind the ALJ's use of the "boilerplate" phrase "not entirely consistent with."  *See* AR 32-34.  While "ALJs routinely use the phrase 'not entirely consistent' the same way the ALJ did here, that usage does not always mean 'inconsistent.' This generalized reference to an inconsistency is not enough to identify an actual inconsistency between objective medical evidence and Plaintiff's testimony," and the Court must examine the "actual inconsistenc[ies]," if any, pointed to by the ALJ.  *S. T. v. Comm'r of Soc. Sec.*, No. 24-cv-07721-SVK, 2025 WL 1924385, at *4 (N.D. Cal. July 14, 2025) (cleaned up) (internal citations omitted).

Turning to the actual, purported inconsistencies identified by the ALJ, the Court agrees with Plaintiff that they are legally erroneous because they are based on apparent misreadings of the record or are otherwise insufficiently explained.  *See* Dkt. 13 at 14-16;  AR 32-34.  For example, the ALJ noted that Plaintiff "alleged being high functioning prior to his 2019 assault (which is somewhat inconsistent with his alleged disability in 2018)."  AR 32.  But as Plaintiff

11

points out, his alleged onset date is August 20 *of 2019*, not 2018, which is entirely consistent with being highly functioning before that date. *See* Dkt. 13 at 15 (citing AR 2226); *see also* AR 256, 260, 258. As another example, the ALJ clearly misread the record in stating that Plaintiff "requested to close his psychological services" in May 2023, when the document cited by the ALJ states that the "Clinician explained" that his "IBH services might be closed" because "he is already connecte[d] to HomeFirst," and that Plaintiff was merely "receptive to the information." *Compare* AR 33 *with* AR 2960 (*i.e.*, Ex. 34F). The remaining records, the findings based on examinations with Drs. Schmidt, Manchanda and Nelson, are discussed above; while some support a lesser degree of severity, they are not *inconsistent* with severity testified to by Plaintiff. *See* AR 33-34. Accordingly, the objective medical evidence cited by the ALJ is either not inconsistent with Plaintiff's testimony or is based on a clear misreading of the medical record. Such misstatements are, as the Court already explained, legal error and may support remand. *See Rogers v. Saul*, No. CV-18-0260-TUC-BGM, 2019 WL 4439689, at *19 (D. Ariz. Sept. 17, 2019); *Cf. Najera v. Colvin*, No. 16-cv-2442-CFE, 2016 WL 7167887, at *2 (C.D. Cal. Dec. 8, 2016) ("ALJ's material mischaracterization of the record can warrant remand." (citing *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999)).

As to the Commissioner's reliance on the ALJ's note of "sporadic and inconsistent mental health treatment," Plaintiff points out in reply that this note related to sporadic "mental status examination *findings*," not treatment, and in any event "centers around treatment records for substance abuse, not mental health." *See* Dkt. 17 at 9-10. The Court agrees. *See* AR at 34-35. Moreover, discrediting Plaintiff's testimony based on "intermittent and inconsistent treatment and active substance use" depends at least in part on the ALJ's rejection of Dr. Nelson's opinion. *See, e.g.*, AR 2993 (opining that "[t]he patient's limitations are primarily due to post-traumatic stress disorder with psychotic features. While his mental health is probably worsened by occasional stimulant use the primary cause and ongoing determinant of his overall state of psychological disability is not substance use."). As explained in Section IV.A.3., above, the ALJ's rejection of Dr. Nelson's opinion is legally erroneous. *See, supra*, § IV.A.3. So too, then, is the ALJ's usage of such rejection to discredit Plaintiff's subjective symptom testimony (to the extent the ALJ

12

relied on sporadic treatment at all).

Finally, the ALJ relied on Plaintiff's "reported independence in self-care and activities of daily living, such as cleaning his room, preparing simple meals, shopping in stores, managing his finances, listening to music, riding his bike, and utilizing public transportation/ride share." AR 35; *see* Dkt. 16 at 15. As a general matter, the "ALJ may consider many factors in weighing a claimant's credibility, including ... the claimant's daily activities." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *superseded on other grounds by* 20 C.F.R § 404.1502(a). At the same time, "the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (rejecting "grocery shopping, driving a car, or limited walking for exercise" as being "inconsistent with [the plaintiff's] claims of pain."). Here, there are two problems with the ALJ's reliance on Plaintiff's daily living. First, all of the activities cited by the ALJ are ones Plaintiff performed alone except for "utilizing public transportation/ride share." *See* AR 35. Thus, these activities have no bearing on at least some of Plaintiff's testimony, *i.e.*, his asserted inability to satisfactorily function in social interactions. Second, the ALJ cites Ex. 14E for Plaintiff *attempting* these activities while completely and inexplicably disregarding what happens when he attempts does so. Plaintiff checked the boxes for "walk" and "bike," but commented "but I don't go because I don't feel safe." AR 363; *see also* AR 423 (a report from Plaintiff's immigration lawyers explaining that when Plaintiff tried to use public transportation on one occasion, after someone yelled at him, he got off in a "panic" and "forgot his bag which held his wallet and phone on his seat.").

In sum, the ALJ has not provided specific, clear and convincing reasons for disregarding Plaintiff's subjective symptom testimony as to the intensity, persistence and limiting effects of his symptoms. The ALJ's explanations fall into three categories: either insufficient, boilerplate assertions of evidence "not entirely consistent" with the testimony, identified inconsistencies that are based on erroneous mischaracterizations of the medical record or reliance on daily living that cherry-picks the record and appears consistent with some of the symptoms testified to by Plaintiff.

Whether the ALJ's error in discounting Plaintiff's testimony was harmless, and the result

United States District Court
Northern District of California

of this error, is addressed in Section IV.C.2. and IV.D., below.

**C.    Issues Three:  In Light of the Above, The ALJ's Determinations as to the Listings Were Not Supported by Substantial Evidence**

Plaintiff challenges the ALJ's determination that Plaintiff did not meet the requirements to be considered impaired for any of the following four Listings:  12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive and bipolar-related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (trauma and stressor-related disorders).  Dkt. 13 at 8; AR 28;  *see* 20 C.F.R. § 404, Subpart. P, App. 1, Part A § 12.00.A.1.  Listings "12.03, 12.04, 12.06, and 12.15 have three paragraphs, designated A, B, and C;  [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C" to qualify.  *Id.*, § 12.00.A.2.  The ALJ found that neither paragraph B criteria nor paragraph C criteria were satisfied, and Plaintiff only challenges the ALJ's evaluation of paragraph B criteria.  AR 28-31;  Dkt. 13 at 8-11.

As the ALJ explained, "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."  AR 28.  The ALJ determined that Plaintiff had only "moderate" limitations in four broad areas of functioning:  (1) Understanding, Remembering or Applying Information;  (2) Interacting with Others;  (3) Concentrating, Persisting, or Maintaining Pace;  and (4) Adapting or Managing Oneself.  AR 28-30.  The ALJ's Decision, as well as Plaintiff's challenge and the Commissioner's rebuttal, focus on these four areas of broad functioning and do not otherwise distinguish between Listings 12.03, 12.04, 12.06 and 12.15.  *See* AR 28-30;  Dkt. 13 at 8-11;  Dkt. 16 at 4-8.  Accordingly, the Cout does the same.

Plaintiff argues that the ALJ's determination of only moderate limitations in each of the four areas was not supported by substantial evidence and that Plaintiff's limitations in each area are either extreme or marked.  For the following reasons, the Court agrees with regard to areas (2)-(4) but not with regard to area (1).

United States District Court
Northern District of California

**1.      The ALJ's Findings as to Broad Areas of Functioning (2)-(4), But Not Area (1), Are Unsupported by Substantial Evidence**

With regard to area (1), "understanding, remembering, or applying information," the ALJ relied on three things to support finding a moderate limitation:  (1) Plaintiff's completion of 3 years of college in, albeit with "reminders to perform self-care and take prescribed medication, difficulty retaining information, and frequently loss of things, like his phone;"  (2) largely positive medical evaluations in September 2023 (with Dr. Satish K. Sharma), July 2023 (with Dr. Schmidt) and February 2024 (with Dr. Manchanda);  and (3) her discounting the evaluation of Dr. Nelson. AR 28-29.  Plaintiff argues that, for various reasons, this evidence is insufficient and that the ALJ also failed to consider his non-treatment records, *e.g.*, submissions from his criminal defense and immigration attorneys, as to his memory impairments.  *See* Dkt. 13 at 8-11.  The Court is not persuaded.  To be sure, the ALJ's discounting of Dr. Nelson's opinions and reliance on Dr. Manchanda's opinions are improper.  *See, supra*, § IV.A.  Additionally, the Court agrees that Plaintiff's completion of 3 years of college, which ended in 2002—nearly two decades before the alleged onset date—is simply irrelevant. *Cf. Wendy A. v. Comm'r of Soc. Sec.*, No. 18-cv-01186-DWC, 2019 WL 351067, at *5 (W.D. Wash. Jan. 29, 2019) ("The ALJ failed to explain how Plaintiff obtaining a college degree nearly 18 months prior to her alleged onset date of disability undermines her testimony.").  Even so, the ALJ's reliance on the September 2023 and July 2023 evaluations of Drs. Sharma and Schmidt are sufficient to support the moderate limitation found. Considering "the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," the Court finds the evidence here is susceptible to more than one rational interpretation.  *See Rounds*, 807 F.3d at 1002.  Specifically, the evidence rationally supports the determination that Plaintiff has some impairment in the area of understanding, remembering, or applying information, whether it is "moderate" or "marked." Thus, the Court must uphold the ALJ's findings in this regard.  *Id.*

With regard to area (2),  "interacting with others," the Court reaches the opposite conclusion.  Here, the ALJ recounted the Plaintiff's subjective testimony, *e.g.*, his fear and "inability to sleep when in the homeless camp for fear of what others will do to him" as well as

15

United States District Court
Northern District of California

Dr. Nelson's assessment of an "extreme limitation" in this area. AR 29. The ALJ also cited treatment records from March of 2022 noting that Plaintiff "as paranoid that someone has tried to kill him by injecting him with poison." *Id.* Yet, based on "cooperative" doctor's visits with Drs. Schmidt and Manchanda and Plaintiff's ability to "utilize[] public transportation or ride share and shop[] in public stores," the ALJ concluded that Plaintiff had only a moderate limitation in this area. *Id.* This is insufficient. "[A] composed and 'normal' demeanor during [one-on-one] doctor visits does not preclude [Plaintiff] from experiencing [symptoms] in other contexts." *E.g.*, *Moody v. Berryhill*, No. 16-CV-03646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017); *see also, supra*, § IV.B. (explaining the ALJ's failure in considering what happens when Plaintiff attempts public transportation). Moreover, the ALJ never addresses the wealth of testimony from Plaintiff about his limitations in this area. *Compare* AR 29 *with* AR 364, 1054, 1110, 2231, 2965, 2971 (testimony, not addressed by the ALJ, that Plaintiff "distrust[s] [and] isolate[s]," had issues with his roommate when briefly in assisted housing, views himself "as a target" and "isolates in order to feel safe," has "reported negative experiences and difficulty adjusting to the environment" of homeless shelters," "perceives other agencies and people as against him;" as to "social activities" reports "No, I used to but the outcome wasn't good so I don't anymore."). The only rational interpretation of the evidence, considering the record as a whole, is that the ALJ simply and improperly disregarded Plaintiff's testimony and Dr. Nelson's opinions, (*see, supra*, §§ IV.A.-B.), and the ALJ's Decision does not have sufficient other evidence to substantiate a moderate limitation in this area. Thus, this determination was in error.

With regard to area (3), "concentrating, persisting, or maintaining pace," the Court's analysis is similar. Again, the ALJ improperly disregards Plaintiff's own testimony and improperly discounts Dr. Nelson's medical opinion while relying on Drs. Schmidt's and Manchanda's opinions. AR 29-30; *see, supra*, §§ IV.A.-B. The ALJ otherwise relies only on the statement that Plaintiff "reported the ability to manage his own finances" but, as Plaintiff argues, his "finances" consisted solely of food stamps which are "straightforward and simple." Dkt. 13 at 10. Weighing the evidence as a whole, given the errors related to medical opinions and Plaintiff's subjective testimony, there is not substantial evidence to support the ALJ's decision as to this area.

United States District Court
Northern District of California

Finally, with regard to area 4, "adapting or managing oneself," the lack of substantial evidence is even more striking. The ALJ does not rely on *any* of the medical opinions to support the moderate limitation and, to the contrary, addresses them only to remark that Plaintiff has been found to have "limitations in insight and judgment." AR 30. The ALJ recites but does not explain why she discounts Plaintiff's subjective testimony. *Id*. And the ALJ notes but does not explain how Plaintiff's ongoing substance abuse factors into her decision. *Id.* The ALJ's Decision appears to come down to the logic that "the claimant resided alone and is generally independent in self-care and activities of daily living" and manages his symptoms "with outpatient level care," and therefore he must be managing himself sufficiently. *See id.* No rational interpretation of the evidence supports this result. The Court has already addressed the ALJ's deficiencies in surface-level reliance on "daily living" and a lack of inpatient care. *See, supra*, § IV.A.2., B. As a further example, noting that Plaintiff "resides alone" sounds substantial on the surface; but the ALJ fails to consider the actual conditions of Plaintiff's residing alone: he is in a homeless encampment, unable to retain housing, and he uses methamphetamine on a weekly basis because he is too scared to sleep for fear of being attacked and burned alive by other residents. AR 35, AR 61. Simply put, there is not substantial evidence to support a moderate limitation as to Plaintiff's abilities to adapt or manage himself.

### 2.    The ALJ's Errors Identified Above Are Not Harmless

The Court now addresses whether these errors were harmless. They were not. "An error is harmless only if it is inconsequential to the ultimate nondisability determination … or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 492 (internal citations and quotations omitted). The ALJ's errors in evaluation of the medical opinions of Drs. Manchanda and Nelson and failure to credit Plaintiff's subjective symptom testimony were not inconsequential because, in light of those errors, the AJL lacked substantial evidence for her finding of only "moderate" disabilities in three of the four broad areas of functioning. *See, supra*, § IV.C.1. Moreover, under the harmless error analysis, the Court may not supply its own reasoning to justify the ALJ's Decision to find moderate limitations but must review the reasons advanced by the ALJ. *See Brown-Hunter*, 806 F.3d at 492 ("A reviewing court may not make

independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless.").

The determination that Plaintiff was only moderately impaired in areas (2)-(4) of functioning was not harmless to the ultimate nondisability determination.  Specifically, if Plaintiff had been determined markedly or extremely impaired in any two of those three areas, he would have met the criteria of paragraph B of for evaluation of Listings 12.03, 12.04, 12.06 and 12.15. *See* AR 28.  The ALJ would then have been required to undertake an analysis of paragraph A – which the ALJ did not do.  Thus, the Court also cannot independently "discern" the ALJ's path "despite the legal error."  *See Brown-Hunter*, 806 F.3d at 492.

Accordingly, the ALJ's errors on Issues 1-3 are not harmless.

**D.      Issue Four: The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

At step four, the ALJ found that Plaintiff could "perform a full range of work" as far as physical limitations but had "the following non-exertional limitations: he can carry out simple instructions and tasks and have occasional interaction with supervisors and coworkers but should not be required to perform tandem or group tasks or work with the general public (this is further defined as work indicated as no more than an 8 in the Selected Characteristics of Occupations (SCO) people rating). The claimant is capable of only simple, work-related decisions and performing work involving only occasional changes in the work setting. He cannot perform production-paced work, such as on a moving assembly line or work involving hourly quotas, but bench work and daily quotas would be acceptable."  AR 31.

With regard to this issue, for the reasons discussed in Sections IV.A.-C., the Court agrees with Plaintiff that the ALJ erred in her rejection of Dr. Nelson's opinion while finding Dr. Schmidt's opinion persuasive, failed to provide specific, clear and convincing reasons for her rejection of Plaintiff's subjective symptom testimony and erred in finding only "moderate" limitations in three of the four areas of broad functioning identified.  *See, supra*, §§ IV.A.-C.  It follows, as the Commissioner concedes, that the ALJ's RFC determination was not supported by substantial evidence.  Dkt. 16 at 13-14 (conceding that the issue is "derivative of" the two

United States District Court
Northern District of California

United States District Court
Northern District of California

underlying issues, above, and advancing no independent arguments to support the ALJ's determination that "Plaintiff had no more than moderate mental limitations.").

This error is not harmless. The vocational expert ("VE"), whom the ALJ found credible, (*see* AR 40-41), testified that a worker being "off task" for "greater than 10%" of a workday is "generally not tolerated," and there would be no jobs in the national economy for a person with such a limitation. AR 78-79. It is not clear how the ALJ accounted for or addressed this limitation, except that the ALJ noted that Plaintiff "cannot perform production-paced work, such as on a moving assembly line or work involving hourly quotas, but bench work and daily quotas would be acceptable." AR 31. Yet, as the ALJ explained, in "assessing mental limitations," she relied on "evidence including the claimant's symptom reports, mental status examination findings, and history of treatment outlined in the discussion of the record above." AR 35 (referring to AR 31-35). Thus, the ALJ's errors in evaluation Plaintiff's subjective symptom testimony, the medical opinions of Drs. Schmidt, Manchanda and Nelson and Plaintiff's limitations in the areas of concentrating, persisting, or maintaining pace and in adapting or managing himself are not "inconsequential" to the RFC and, in light of the VE testimony, are not "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 492.

## V.    CONCLUSION AND SCOPE OF REMAND

For the forgoing reasons, the ALJ's Decision was erroneous in several respects, the errors were not harmless, and remand is appropriate. Plaintiff argues, moreover, that the Court should remand for an award of benefits rather than further proceedings. Dkt. 13 at 16-17. Specifically, a court "should … remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir.2000)). The Court disagrees that the *Harman* elements are met here; there remain outstanding issues for the ALJ to resolve and it is not clear that the ALJ would be required to find Plaintiff disabled. For example, while the ALJ erred in finding Dr. Manchanda's opinion

19

persuasive as to the "social interaction" impairment and erred in discounting Dr. Nelson's opinions while accepting Dr. Schmidt's opinions, it is for the ALJ and not this Court to determine whether to accept and weigh both Dr. Schmidt's and Dr. Nelson's opinions or to discount both.[4] Similarly, while the ALJ may not discount Plaintiff's subjective symptom testimony, in light of such testimony and the relevant medical opinions, the ALJ—not this Court—should formulate an appropriate RFC that accounts for the VE's testimony as to limitations in off-task time.

Accordingly, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the case for further proceedings before the agency.

**SO ORDERED.**

Dated: June 10, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

---

[4] It is clear from the record that the ALJ would be required to find that Plaintiff is at least markedly impaired in broad area of functioning (4), "adapting or managing oneself." *See, supra*, § IV.C.1. However, because paragraph B requires a finding of marked or extreme limitation in at least two broad areas of functioning and areas (2) and (3) remain unresolved, and because the ALJ did not undertake the paragraph A analysis, there nonetheless remain outstanding issues that must be resolved before a determination of disability could be made at step two.